UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYPHERMINT, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| 7-ELEVEN Inc., | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

This controversy involves Defendant 7-Eleven's acknowledged material breach of its contract with Cyphermint, Inc. and the defendant's subsequent threat to improperly draw down a $10 million letter of credit to cover fees that it has not earned and that are not currently due.

Defendant 7-Eleven admits that it has materially breached its contract with Cyphermint. After promising to have at least 2,000 specialized kiosks offering services provided by Cyphermint "installed and operating" by December 31, 2003, 7-Eleven intentionally breached its promise by having in place only 16 such kiosks when the deadline passed. After acknowledging this breach and receiving notice of Cyphermint's intent to terminate the agreement, 7-Eleven stated that it plans to draw down a $10 million letter of credit to cover fees for kiosks that were not installed in time. As a further example of its bad faith and propensity to ignore its contractual obligations, 7-Eleven failed to implement a national marketing and advertising plan contemplated by the agreement – a plan for which Cyphermint paid an upfront fee of $5,850,000. In short, rather than acting as Cyphermint's business partner and attempting to advance their

mutual interests, 7-Eleven appears to be using Cyphermint as a private bank from which it can extract cash according to its own terms.

Because this dispute involves a minimal number of material facts and turns principally on an interpretation of the parties' contract, Cyphermint asks this Court for an expedited discovery and trial schedule. Through this action, Cyphermint seeks a declaration of the parties' respective rights and obligations under the contract and additional appropriate relief.

## PARTIES

1. Cyphermint, Inc. is a privately-owned New York corporation with its principal place of business in Marlborough, Massachusetts. Cyphermint provides an internet payment system that allows its users to conduct secure online transactions.

2. 7-Eleven Inc. is a Texas corporation with its principal place of business in Dallas, Texas. 7-Eleven operates and franchises convenience stores throughout the world, including stores in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the controversy is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over the parties because Cyphermint's claims arise from business that 7-Eleven transacted within the Commonwealth and because 7-Eleven is doing business within the Commonwealth.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the defendant corporation is subject to personal jurisdiction in this district.

## JUSTICIABLE CONTROVERSY

### The Parties Enter into a Binding Contract

6.     On or about February 28, 2002, Cyphermint and 7-Eleven entered into a contract entitled the Vcom™ Project Master Agreement (the "Agreement") (attached hereto as Exhibit A). The Agreement became effective on March 1, 2002.

7.     This Agreement was part of 7-Eleven's Vcom™ Project – a project under which 7-Eleven planned to install and operate a system of ATM-like kiosks throughout its stores. Through these specialized Vcom™ Units, Cyphermint planned to advertise other companies' wares to 7-Eleven's customers and to allow these customers to access web based content and services, to purchase merchandise through internet retailers, and to access the Cyphermint PayCash System (collectively, the "Services").

8.     Under the terms of the Agreement, 7-Eleven was to retain sole ownership of the Vcom™ Units and to have the right to offer certain "Core Services" on the units in addition to those provided by Cyphermint. Examples of such Core Services included check cashing, ATM functionality, money orders, lottery tickets and bill paying.

9.     7-Eleven agreed that, as soon as Cyphermint could provide any of the Services in a manner functionally consistent with the Vcom™ Units and capable of satisfactorily performing, 7-Eleven would make such Services available on an exclusive basis on all Vcom™ Units located on 7-Eleven's premises.

10.    Upon Cyphermint's satisfaction of the above conditions, 7-Eleven agreed to install and operate at least 2,000 Vcom™ Units by December 31, 2003. The parties explicitly agreed that 7-Eleven's failure to comply substantially with this covenant would amount to a material breach of the Agreement.

11. Specifically, the Agreement states that

> [s]ubject to the satisfaction of the Conditions Precedent, 7-Eleven agrees to install and operate no fewer that 2000 Vcom™ Units by December 31, 2003. The parties understand and agree that 7-Eleven's failure to substantially comply with this Section 3.7 shall constitute a material breach of this Agreement.

12. Because Cyphermint's financial benefit under the Agreement was to derive from customer transactions on the Vcom™ Units, this 2,000-unit minimum was required to justify Cyphermint's financial commitments under the Agreement.

13. The parties extensively negotiated this 2,000-unit minimum, which was a material factor in Cyphermint's ultimate decision to execute the Agreement.

14. In exchange for exclusive access to 7-Eleven's customer base, Cyphermint agreed to share with 7-Eleven a portion of the fees generated by its provision of the Services.

15. In addition, Cyphermint agreed to pay to 7-Eleven a Placement Fee of $10,000 for each Vcom™ Unit that was "installed and operating" as defined by the Agreement. The Agreement calculated the annual Placement Fee by multiplying the aggregate number of "installed and operating" units by $10,000 and subtracting the sum of all Placement Fees previously paid. The Agreement capped the total amount of Placement Fees for any one year at $10 million.

16. A Vcom™ Unit was considered to be "installed and operating" when

> a Vcom™ Unit [was] physically fully operational (including but not limited to the touch screen and the upper loop monitor) in a 7-Eleven store in accordance with the specifications as set forth and agreed to in the System Design Documents and [was] capable of satisfactorily performing the service(s) it [was] designed to perform, connected to and addressable via a 7-Eleven network, and subject to the conditions of this Agreement and any applicable Schedules, capable of running the Service Provider Software and providing the Service Provider Services to users of such Vcom™ Unit (except where such capability [was] not possessed or ha[d] been impaired as a result of the Service Provider or Service Provider Software).

17. The Agreement provides that, with respect to the Placement Fees,

(a) the initial payment shall be payable on the later of July 1, 2003 or the Effective Date and (b) each payment thereafter, for each of the years ended December 31, 2003 through 2008, shall be payable not later than July 1 immediately following each such year.

18. To secure the payment of these Placement Fees, the Agreement required Cyphermint to provide a $10 million irrevocable letter of credit in favor of 7-Eleven.

19. Pursuant to the Agreement, on or about July 12, 2002, Cyphermint caused an irrevocable letter of credit for $10 million to issue from Credit Suisse First Boston in favor of 7-Eleven (the "Letter of Credit"). (A copy of the original Letter of Credit is attached hereto as Exhibit B. For the Court's convenience, a more legible copy is attached as Exhibit C.)

20. The attached schedules to the Letter of Credit allow 7-Eleven to demand payment under two circumstances.

21. First, 7-Eleven can demand payment in an amount not greater than the balance of the credit amount if the demand is made within 59 days prior to the expiration date of the Letter of Credit and prior to December 1, 2008. The expiration date of the Letter of Credit is currently February 28, 2005.

22. Second, 7-Eleven can demand payment for Placement Fees due and owing by Cyphermint if 7-Eleven has invoiced Cyphermint for such fees and they remain unpaid for at least twenty-one days after the due date. The due date for payment in the years 2003-2008 is July 1, and the due date for payment in the year 2009 is February 1.

23. The Agreement also provides for the payment of a one-time marketing fee of $5,850,000 to 7-Eleven for the "2002 and 2003 expenses associated with the Vcom™ Project national rollout…." (the "Marketing Fee").

24. If either party materially breached the Agreement, the other party could terminate it. Specifically, Paragraph 20.2.3 provides that, if

> [e]ither Party materially breaches the Agreement and fails to cure such material breach within thirty (30) days of its receipt of written and detailed notice thereof…,
>
> …
>
> …[the other Party] may, by giving written notice to the Defaulting Party, terminate the Services and/or this Agreement, in whole or in part, as of a reasonable date specified in the notice of termination or immediately upon the expiration of the respective cure period…."

### Cyphermint Terminates the Contract After 7-Eleven Admits and Fails to Cure Its Material Breach

25. 7-Eleven committed a material breach of the Agreement by failing to substantially comply with its covenant to have at least 2,000 Vcom™ Units "installed and operating" by December 31, 2003.

26. Although Cyphermint fulfilled all of the conditions required to obligate 7-Eleven to satisfy this 2,000-unit minimum, 7-Eleven had, upon information and belief, only 970 Vcom™ Units physically in stores as of December 31, 2003.

27. According to tests performed by Cyphermint, only sixteen of these 970 units were "installed and operating" as defined by the Agreement on December 31, 2003.

28. In addition, upon information and belief, 7-Eleven failed to implement the "national rollout" advertising and marketing plan contemplated by the Agreement. Although Cyphermint paid $5,850,000 to help defray these advertising and marketing expenses, Cyphermint is not aware of any evidence that 7-Eleven undertook or implemented such a plan. This failure amounts to an additional breach of the Agreement.

29. In a letter dated January 2, 2004, Joseph Barboza, Cyphermint's President and Chief Executive Officer, notified 7-Eleven of its material breaches of the Agreement and of

Cyphermint's intent to terminate the Agreement for cause due to such breaches unless 7-Eleven immediately cured them. (A copy of this letter is attached hereto as Exhibit D.)

30. In its response letter dated January 19, 2004, 7-Eleven acknowledged that it had committed a material breach of the Agreement by failing to install the required 2,000 Vcom™ Units and stated that it would be unable to cure this breach. (A copy of this letter is attached hereto as Exhibit E.)

31. Specifically, J. Grady Giddens, a 7-Eleven Vice President, wrote that

> 7-Eleven will not be able to cure the material breach of having less than 2,000 units installed by December 31, 2003.

32. Simultaneously with the filing of this Complaint, Cyphermint provided notice to 7-Eleven of its termination of the Agreement for cause pursuant to Paragraphs 20.2 and 20.2.3. (A copy of this letter is attached as Exhibit F.)

### 7-Eleven's Improper Threat to Draw Down the Letter of Credit

33. Notwithstanding 7-Eleven's acknowledgement of its material breach, 7-Eleven has indicated that it plans to draw down the $10 million Letter of Credit.

34. In a recent telephone conversation with Cyphermint's President and Chief Executive Officer, J. Brady Giddens, a 7-Eleven Vice President, stated that 7-Eleven planned to draw down the $10 million Letter of Credit for Placement Fees even though there was no possibility that 7-Eleven would be able to cure its material breach of the Agreement.

35. 7-Eleven is not entitled to recover Placement Fees on any Vcom™ Units that were not "installed and operating" by December 31, 2003.

36. Moreover, the conditions required by the Letter of Credit for 7-Eleven to demand payment under that letter have not been satisfied.

37. In light of 7-Eleven's acknowledgement of its material breach and the fact that the required conditions for 7-Eleven to demand payment under the Letter of Credit have not been met, any demand by 7-Eleven for payment would be tantamount to perpetration of a fraud against Cyphermint and would violate 7-Eleven's obligation to act in good faith.

38. In response to 7-Eleven's threats to draw down the Letter of Credit, Cyphermint requested that Credit First Suisse Boston (the "L/C Bank") issue notice to 7-Eleven requesting its approval to terminate the Letter of Credit. 7-Eleven refused to assent to this request, which, upon the filing of this Complaint, is now withdrawn.

## DECLARATORY JUDGMENT

39. Cyphermint adopts and re-alleges Paragraphs 1 through 38 as if fully set forth herein.

40. This is an actual controversy within the meaning of 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

41. The parties' controversy is ripe in that 7-Eleven has admitted its material breach of the Agreement and has threatened to draw down the $10 million Letter of Credit. This Court's declaration of the parties' respective rights would enable the parties to put their underlying dispute to rest. All parties necessary to the resolution of this dispute are parties to this action.

## REQUEST FOR RELIEF

WHEREFORE, Cyphermint respectfully requests that this Court:

A. Order expedited discovery and expedited trial on the merits;

B. Declare 7-Eleven to be in material breach of the Agreement due to its failure to have at least 2,000 Vcom™ Units installed and operating as of December 31, 2003, and its

failure to implement the requisite advertising and marketing plan in conjunction with Vcom™'s national rollout;

    C.    Declare that 7-Eleven is not entitled to any Placement Fees on Vcom™ Units that were not "installed and operating" by December 31, 2003;

    D.    Declare that 7-Eleven has not satisfied the preconditions for presenting a demand for payment under the Letter of Credit;

    E.    Order 7-Eleven to refund to Cyphermint the $5,850,000 Marketing Fee plus interest that Cyphermint paid to 7-Eleven;

    F.    Award to Cyphermint all damages incurred as a result of 7-Eleven's breach of the contract and other wrongful conduct;

    G.    Determine and declare the parties' rights under the Agreement and the Letter of Credit; and

    H.    Award to Cyphermint such other and further relief as this Court deems just and proper.

Respectfully submitted,

CYPHERMINT, INC.

By its attorneys

*James J. Marcellino /wf*
James J. Marcellino (BBO #318840)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109
Ph: (617) 535-4000
Fax: (617) 535-3800